Judge .Owsley
delivered the opinion.
On tbe 3d of July, lb 19, George Norton executed a note by which be promised to pay Daniel Halstead or order, sixty days after date, $4,700, at the office of discount and deposit of the United States Bank at Lexington.
The cote was afterwards assigned by Halstead to Vena-ble, and by Venable to Adams, by Arfaras to Joshua Norton, and by Norton to the president, directors and com¡pany of the bark of the United States.
To recover the amount of the note, the bank brought a petition and summons against Norton, tbe payor. The petition sets out the note, and the several assignments thereon in Anee ver6íJ, andina!) other respects conforms to .the requisitions of the act of ¡the ¡Legislature of this country giving that remedy.
Norton demurred to the petition, and the demurrer being joined by tbe Bank, the court rendered judgment in jjar of the bank’s action.
From that judgment the bank has appealed to this court.
The assignment pf errors question the decision of the court on the demurrer.
The supreme court of the union has a right on atl questions arising under the constitution or any statute of the U. States té decide : they possess appellate jurisdiction from the state courts on ttiose questions, and the state courts aré bon- d by tltei'-or.- ion. 2 Mar .99 ae£t
In reversing tbe decision of that court, the legal and constitutional existence of the hanks will be assumed as a proposition not now admitting of controversy. The share holders of the bank have been incorporated by an act of the Congress of the United States ; and that act of incor poration has been held, by the Supreme court of the na: tsou, not to be any infraction of the constitution of the U, States : A court deriving from that constitution jurisdic tion in all cases, in law and equity, arising under the constitution and laws of the United States, and possessing appellate jurisdiction over the final judgments and decrees of the highest courts of law or equity of any State, in'all cases involving the construct ion of any clause of the constitution or statute of the United States,' and whose exposition of the constitution or statutes of the United Stales is conclusive on all state courts throughout the U. Slates.
The decision of the court below was not, however, ⅛ argument attempted to be maintained on the ground of the bank not having been constitutionally established, but it was contended that under the act of incorporation, the bank is inhibited from purchasing debts or choses in action of any description except bills of exchange ; and it was urged, that the assignment to the bank, of itself, implies; a purchase by. the bank of Norton’s note ; and hence it was insisted, that the bank should not be allowed to maintain its action on the note.
If the bank be at liberty to take notes in security for th# repayment of money loaned, (and that it is, there can be n® question) it would not follow, (bat the court decided correctly is sustaining Norton’s demurrer, even were it con* ceded that (he bank is not, according to the popular acceptation of the expression, purchase, permitted to purchase notes on others. Kor if the bank may take notes id security, it may for that purpose receive an assignmeni of the notes, and bv the assignment the legal right will pass to the bank, and possessing tbe legal right, and as incident thereto, the bank as assignee will be entitled to sue os the note: It forms no argument against tbe bank’s right oí smt in such a case, that tbe assignment may have been made on other considerations than to Secure the repayment of money actually loaned. If it were so made, the fact might be made appear by averment of tbe defendant, but as the forms of pleading do not require the assignee in ail actum oa theassigiied instrument, to alledge the couside- *424 ration of (he assignment, it is sufficient, on a demurrer W his petition-, or declaration, that the plaintiff may be an assignee and has in fact an assignment of the note on which be has commenced bis action.
The Bank of‘heUnired States is au-purchase the notes ef indi, viduals.
But supposing vie are mistaken in this, and conceding for the present, that the assignment, exvi termini, implies a purchase to have been made by the bank of Norton’s note, we will proceed to inquire, whether, or not, from any thing contained in the act of incorporation the bank is interdicted from purchasing such notes.
The first section of the act declares, that a bank of the United States of America, with a capital of thirty-five millions of dcdlats, divided into three hundred and fifty thousand shares of one hundred dollars each, shall be established.
The seventh section, after incorporating the subscribers to tbé bank, and giving the bank a name, aod after limiting its duration, declares that, they, by that name shall be, and are hereby made able and capable, in law, to have, purchase, receive, possess, enjoy and retain to them and their successors, lands, rents, tenements, and hereditaments, goods, chatties and effects, of whatsoever kind, nature and quality, to an amount not exceeding in the whole, fifty-five millions of dollars, including the amount of capita! Stock ; arid the same to sell, grant, demise* alien or dis: pose of ; to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States ; and also to make, have and use a common seal, and the same to break, alter and renew, at their pleasure, &c.
Were this the only provision in the act having any bearing on the question, there would be no rational ground to controvert the right of the bank to purchase notes. The hank would then not only possess those rights, which re-suit incidentally to corporations of its nature ; but its right t0 purchase, might be asserted under the express provisions^ of the act : for although notes are not specifically named in that provision which authorizes the bank to purchase, the expression, effects, therein employed, is sufficiently comprehensive to embrace theor, and when considered in connection with the other expressions employed, apply with pc: aliar propriety io all choses in action.
Bul the close of the seventh section it is moreover pro- *425 Vi Jed, that al! and singular the acts, matters and things which to the bank may appertain to ⅛⅛ shall be subject, nevertheless, to the rules, regulations, restrictions., limitations and provisions in the act thereafter prescribed and declared. And by the ninth article, which among others is adopted, by the eleventh section of the act, as rules, restrictions, limitations, and provisions, forming fundamental^ articled of the constitution of tlie corporation, it. is declared, that, “ the said corporation shall not, directly or indirectly, deal or trade in any thing except bills of exchange, gold or silver bullion, or in the sale of goods, really and truly pledged for money loaned and not redeemed in due time, or goods which shall be the proceeds of its lands. It shall not be at liberty to purchase any public debt Whatever. nor shall it take more than at the rate of six per cent, per annum for or upon its loans or discounts.”
It is upon the construction to be given to the expressions, deal or trade, employed in this article, that the right of tht bank to purchase promissory notes must turn. This article forms a component part oft.be constitution of the corporation — by the constitution the bank was created — * from it, the bank derives all of its rights and capacities; and beyond, the limits presented by the constitution, the bank cannot be permitted to go ; and if tbosp limits should be transcended by the bank, no right can thereby be acquired.
. But is the bank restricted, by any thing in this article, 'from purchasing promissory notes ?
If by employing the expressions, deal or trade. Congress is understood to have intended to prevent the bank (’rom purchasing any thing but bills of exchange, or gold and silver bullion, there is a yestriction ; but if such were not its intention, there is no restriction. We say “ intended by Congress,” and this we say, because it is a rule, of universal application to every species of writings, so to construe them as best to answer the intention of their makers. This rule has long since been applied to statutes, and bas, from its intrinsic propriety, anda train of numerous adjudications, become a fundamental principle in their construction. 6 Bac. Abri. 380. Plow. 232. 11 Rep. 73.
Oi'such high and pre eminent consideration is the intention of the Legislature, that it is said, a thing which is within the letter of the Statute, is not within the siatote, fieless is be within the intention of the makers. Plow. 18< *426 So, a.thing within the inteotion .of. the makers of a s'al ule,-is said to be as much within theslatute, os if it were witb-⅛ Ae ictter. Plow. 366,
Id construing statutes, other rules have also been resorted to, not, howe.ver, to defeat the iolention of the makers but as auxiliary rules,to assist in searching out the intention, and whenever the intention is ascertained, the construction must conform to it.
If-then, the intention of the Legislature is to be regarded, and, we give to. the expressions, deal or trade, that construction which we suppose must have been intended: by Congress, they cannot be admitted to foray any restraint on the,right of the corporation to purchase. If they form any restraint, the restriction must, according to the general language employed, extend to the purchase of every thing, except bills of exchange, or gold or silver bullion; for ¡he expressions are general, that the corporation shall not directly, or indirectly, deal or trade in any thing except bills ofexchange or gold or silver bullion. From these expressions, therefore, io impute an intention, jn Congress, rot to allow the corporation to purchase any thing, but bids ofexchange, or gold or silver bullion, would be subjecting that Legislature, to the strange inconsistency, of having created a bank, with a capital of thirty-five millions of dollars, and vet, not given to it the capacity of commencing its banking operations — of having, even, interdicted tjie purchase of those articles without the purchase of which a solitary note could not be issued by the bank. It tvQuld, moreover, subject Congress to the further inconsistency, of having, in a subsequent article of the constitution or charter of the bank.¡ taken from the bank a right which bad been expressly given to it in a previous article. For, the ninth, article, which employs the expressions, deal or trade, contains no, exception, or saving in favour of the right of the .corporation to purchase lands ; and the seventh article, gives to the corporation, in express terms, the right of purchasing lands, at, sales under its own judgments, and receiving conveyances in satisfaction of debts, previously contracted, in (be course of its business.
But the latter clause of the ninth article places the intention of. Congress in employing those expressions out of qnestion---i! shews, conclusively, that it was not designed by the expressions, de&l or trade, to prohibit the corporation from purchasing-f-it demonstrates, that Congress un *427 -derstood the corporation might, notwithstanding those expressions, purchase, and to .prevent it from buying any debt on the country, the clause, to which we allude, declares, that the corporation shall not be at liberty to pur-eiiasc any public debt whatsoever.
But it may be asked, for what purpose can the expressions “ deal or trade” have been employed.
We answer — not to re-strict the bank in its right to purchase,, but to denote what things may, or may not be both bought and s.old by the bank
But to this construction of those expressions, it may be replied, that they are employed in a different sense in twelfth section of the act of incorporation, and it may be contended that the same expressions, when used in different parts of the samé act, ought to base the same construction given to them.
It is true, in the twelfth section ofthe act$ it is declared, “ if the said corporation, or any person or persons, for, or to the use of, the same, shall deal or trade .in. buying or selling, goods, wares or merchandize, or •commodities, whatever, contrary to the provisions of the act, all and every person and persons, by whom any order or direction for so dealing or trading shall have been given, and.aH and every person and persons, who shall have beet) concerned as parlies or agents therein, shall forfeit and lose tribie the Value of the goods, wares and merchandize, and commodities, in which such dealing and trade shall have been,” &c.
From the peculiar phraseology of tins section, it is petv fectFy clear that the expressions “ deal or trade,” are there-' in employed in a ser se different front that which we have supposed was intended in the ninth article, arid we were at first inclined to construe those expressions in the same sense in the ninth article, that they seem evidently to imply in the twelfth.
But on further reflection-, and a* more attentive examination of tiré various provisions of the act, we have become satisfied, that tiróse expressions were not intended by Congress to be employed i» the same serrse,; in those parts of the act to which we have referred We know that it is not uncommon, in construing Statutes, to attach the same meaning, to the same expressions, when employed in different parts of the same statute ; but that is always done to effect what is supposed to be the intention '•{'the law makers, and whenever, frota other parta of the *428 statute, the intention appears to be otherwise, the inteuí lion must prevail, and the expressions employed so con-«trued as best to answer that intention.
We nave, from other parts of the act, already seen ii* wkht sense the expressions, “ deal or trade” were intended to be employed in the ninth article ; aud from the phraseology of the twelfth section there can be no doubt those expressions were intended to be, therein, employed Jn a different sense. The difference in the import of those fexpressions does not, however, result merely from being employed indifferent sections of the act, but by superad-ding to the expressions, “ deal or trade,” those other expressions, “ in buying and selling,” the expressions, “ deal ®r trade,” are made to convey a different import to that which they would otherwise imply. Indeed, Congress seemingly awbre that words employed in one sense, might, if afterwards employed in the same statute, be construed in the same sense, and recollecting, when about to employ the expressions “ deal or trade” in the twelfth section, the sense in which they had been employed in the ninth article, appears to have designedly superadded the expressions, “ in .buying and selling,” to give to the expressions, “ deal or trade,” a sense different from that in which they had previously been employed.
By Ihus construing the expressions, “deal or trade,” and giving to theai, whenever employed, that signification Which was intended by the law makers, a consistency may be maintained between the different parts of the act of incorporation.
The bank will then be at liberty to deal or trade in both buying and selling bills of exchange and gold, and silver bullion. It will be at liberty to purchase lauds, tenements, hereditaments, goods, chatties and effects, to an amount not exceeding fifty-five millions of dollars including its capital stock ; but the lands must be such as are requisite tor its immediate accommodation in relation to the convenient transaction of its business, or such as may be mortgaged to it by way of security, or conveyed to it in satisfaction of debts previously contracted in the course of its dealings, or purchased at sales upon judgments which shall nave been obtained for such debts.
But It will not be at liberty to purchase any public debt whatever. It may sejl such goods and chatties only as «1 ay be pledged to it to secure the repayment of money ac,* *429 jfuallv loaned, or which may be the proceeds of its lands'
Wuklifj'e ⅝- Clay, for appellants, Humphries and Hag-gin, contra.
And it it should either buy, or sell ant goods wares, merchandize or ' commodity, whatever, contra»} to the provisions of the act, all and every person or persons concerned in The purchase or sale, will be liable to forfeit and lose treble the value of the goods, wares, merchandize and commodities, so purchased or sold.
Upon the whole, we think the bank had a right to purchase the note on Norton, and that Norton’s dtmu-ref should have been overruled by the court below.
The judgment must consequently be reversed with cost, and the cause remanded to that court and furl iter proceedings there bad not inconsistent with this opinion.